UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| IN RE: ) | |
| ) | CASE NO. 13-20250 (ASD) |
| NELSON R. ROUETTE, and ) | |
| SANDRA CALVO ROUETTE, ) | CHAPTER 7 |
| ) | |
| DEBTORS. ) | |
| ) | |
| HYUNDAI-WAI MACHINE ) | |
| AMERICA CORP.,[1] ) | |
| ) | ADV. PRO. NO. 13-2018 |
| PLAINTIFF, ) | |
| ) | |
| v. ) | |
| ) | |
| NELSON R. ROUETTE, and ) | RE: ECF NO. 33 |
| SANDRA J. CALVO ROUETTE, ) | |
| ) | |
| DEFENDANTS. ) | |

**MEMORANDUM AND ORDER ON DEBTOR-DEFENDANTS' MOTION TO DISMISS**

ALBERT S. DABROWSKI, Chief United States Bankruptcy Judge

### I.    INTRODUCTION

Before the Court is a Motion to Dismiss this adversary proceeding filed pursuant to Fed. R. Civ. P. 12(b)(6), by Nelson R. Rouette and Sandra J. Calvo Rouette, the Debtor-Defendants (hereinafter, the "Debtors") in this bankruptcy case and adversary proceeding. A hearing was held on the Motion to Dismiss and related pleadings on October 10, 2013

---

[1]There is some uncertainty as to the proper spelling of the Plaintiff, Hyundai-Wai's name. On the Adversary Cover Sheet and in the Complaint, the name is spelled as indicated. However, in more recent pleadings the Plaintiff's name has been consistently spelled Hyundai-W*ia*. Nevertheless, until a pleading is filed either in the form of an amended complaint or other appropriate pleading to correct the spelling of the Plaintiff's name, the Court will continue to use the spelling as contained on the official court docket.

(hereinafter, the "Hearing"), following which the Court took the matter under advisement. For the reasons set forth hereinafter, the Motion to Dismiss shall be granted in part and denied in part.

## II.   BACKGROUND

On February 8, 2013 (hereinafter, the "Petition Date"), the Debtors commenced the above captioned bankruptcy case by the filing of a voluntary petition under Chapter 7 of the United States Bankruptcy Code. On May 13, 2013, Hyundai-Wai Machine America Corp. (hereinafter, the "Plaintiff) commenced the above captioned adversary proceeding by filing a complaint (hereinafter, the "Complaint") against the Debtors.

*A. The Complaint*

Through the Four-Count Complaint the Plaintiff seeks a determination that the Debtors have personal liability to it on the grounds of veil piercing related to a $1,650,000 debt of Quality Machine Solutions, Inc. (hereinafter, "QMSI"), alleged to be a wholly-owned business of the Debtors (Count One).  Assuming that the Plaintiff prevails on the veil piercing issue in the adversary proceeding, the Plaintiff then seeks to have the debt determined to be nondischargeable under Bankruptcy Code §§523(a)(2)(A) ("money . . . obtained by – false pretenses, a false representation, or actual fraud"); 523(a)(4) ("fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny"); and/or 523(a)(6) ("willful and malicious injury") (Counts Two - Four).

The Complaint further and more specifically alleges, *inter alia*, that the Debtors, as the sole shareholders, directors, and officers of QMSI, oversaw the purchase of millions of dollars of machine tools and equipment from the Plaintiff on credit; resold those assets

to QMSI's customers; used QMSI's corporate credit card to pay for millions of dollars in personal expenses, including numerous luxury items; directed the use of corporate funds to pay those credit card charges; periodically changed QMSI's mailing address to their own personal address; and took excessive shareholder distributions – all at a time when QMSI failed to make payment to the Plaintiff.

The Complaint also asserts that on September 29, 2009, the Plaintiff obtained a judgment against QMSI in the United States District Court for the District of New Jersey in the amount of $1,650,000, plus interest (hereinafter, the "District Court Judgment"); that the Plaintiff subsequently filed suit against Debtors in the United States District Court for the District of Connecticut (hereinafter, the "Connecticut Action"), seeking to pierce the corporate veil to hold the Debtors personally liable for QMSI's judgment debt, with the Connecticut Action stayed as of the Petition Date pursuant to §362(a).

*B. The Motion to Dismiss*

On August 26, 2013, Debtors filed a *Motion to Dismiss*, accompanied by a *Memorandum of Law in Support of Motion to Dismiss*, ECF Nos. 33-1 and 2, and further supported by an *Amended Memorandum of Law in Support of Motion to Dismiss* (hereinafter, the "Amended Memorandum of Law"), ECF No. 37, seeking to dismiss this proceeding under Fed. R. Civ. P. 12(b)(6), applicable in adversary proceedings by Fed. R. Bankr. P. 7012(b).[2]  The Plaintiff responded on October 4, 2013, by filing a *Memorandum in Opposition to Defendants' Motion to Dismiss Complaint to Declare Debt*

---

[2] Rule 12(b)(6) provides for dismissal for "failure to state a claim upon which relief can be granted." It is somewhat curious that the Debtors do not also seek dismissal under Fed. R. Civ. Rule 12(b)(1) ("lack of subject-matter jurisdiction").

*Nondischargeable,* (hereinafter, the "Memorandum in Opposition"), ECF No. 38, following which the Debtors on October 9, 2013, responded by filing *Defendant's [sic] Memorandum of Law in Reply to Plaintiff's Memorandum in Opposition (Doc. # 38)* (hereinafter, the "Reply Memorandum"), ECF No. 39.

### III. DISCUSSION

Distilled to its essence, the Motion to Dismiss asserts three grounds for dismissal of this adversary proceeding.

First, the Debtors do not presently contest that the Plaintiff obtained the District Court Judgment against QSMI, rather they maintain that the present matter cannot be adjudicated because the Connecticut Action for veil piercing was not determined prior to the Petition Date, and, therefore, the Debtors have no liability to the Plaintiff. Stated differently, the Debtors appear to argue that because there was no predetermined obligation recognizable under the law prior to the Petition Date, the Plaintiff has no existing claim against the Debtors. In support of their argument, the Debtors look to the phrase "right to payment" under §101(5)(A) as a prerequisite to all the phrases that follow and assert that because the Plaintiff had no established right to payment as of the Petition Date it cannot be established post-petition. The Debtors also deny that the Plaintiff's claim fits under any of the other possible formulations of "claim" as spelled out in §101(5)(A), which provides:

> (5) The term "claim" means—
>
>    (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured. . . .

Although the Debtors cite a number of cases in support of their position, none of them is dispositive of the present matter, and at least one supports the Plaintiff's position. The Debtors quote as follows from *LTV Steel Co. v. Shalala (In re Chateaugay Corp.*, 53 F.3d 478, 497 (2d Cir. 1995): "Where there is no legal relationship defined at the time of the petition . . . it would be impossible to find even the remotest 'right to payment.'" Debtors' Amended Memorandum of Law, p. 6.  However, the language omitted [" . . ."] from this quote – "*that is, where the statute imposing the liability has not been enacted*," (emphasis added) – is highly relevant to the present matter, as the rights at issue in *LTV Steel* arose under a statute, but the applicable statute did not exist prior to the bankruptcy filing in that case.  Upon consideration of the complete *LTV Steel* quote, the Court finds that case distinguishable and not controlling here, where the claims are based on contract and torts and arose prior to the Petition Date.

Moreover, additional and clarifying language in *LTV Steel,* lends further support to the Plaintiff's position*.*

> A claim will be deemed pre-petition when it arises out of a relationship recognized in, for example, the law of contracts or torts.  "A claim exists only if before the filing of the bankruptcy petition, the relationship between the debtor and the creditor contained all of the elements necessary to give rise to a legal obligation -- 'a right to payment' -- under the relevant non-bankruptcy law." *In re National Gypsum Co.*, 139 B.R. 397, 405 (N.D. Tex. 1992).

*LTV Steel*, 53 F.3d at 497.

In the instant proceeding all of the elements permitting a court to determine whether the Debtors should be held liable for their corporation's debts were alleged to be in place

prior to the Petition Date.³ The contract between the Plaintiff and the Debtors' company was entered into prior to the bankruptcy. Money and goods changed hands before the bankruptcy. The Debtors' alleged conduct that forms the basis for veil piercing also occurred prepetition. The only thing missing is what is sought – an adjudication of liability.

This proceeding is analogous to the more typical personal injury case arising from a prepetition accident but where there is no judgment because the state court action was stayed by the automatic stay of §362(a). The absence of a judgment in such a case does not mean the party does not have a prepetition "right to payment." That is why the phrase "right to payment" is modified by the phrase, "*whether or not such right is reduced to judgment*, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. §101(5)(A) (emphasis added).

As the United States Supreme Court noted in *Johnson v. Home State Bank*, 501 U.S. 78, 83, 111 S. Ct. 2150 (1991) concerning §101(5), "Congress intended by this language to adopt the broadest available definition of 'claim.'" Thus, in that case the Supreme Court held that a mortgage interest that survives the discharge of a debtor's personal liability is still a "claim" within the meaning of §101(5). *Prior to Johnson v. Home State Bank,* in

---

³The Debtors acknowledge that "[i]n considering a motion to dismiss under Rule 12(b)(6) the court must accept all well-pleaded allegations as true and draw all reasonable references in favor of the pleader." Amended Memorandum of Law, p. 3. See, e.g., *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985) (A motion to dismiss is designed to test the legal sufficiency of the complaint and is not intended to weigh the sufficiency of evidence which might be presented at trial); *Gant v. Wallingford Board of Ed.*, 69 F.3d 669, 673 (2d Cir. 1995) ("The issue is not whether a plaintiff is likely to prevail ultimately, *but whether the claimant is entitled to offer evidence to support the claims*") (citations and internal quotation marks omitted) (emphasis added).The motion should be granted where "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

*Pennsylvania Dep't of Pub. Welfare v. Davenport*, 495 U.S. 552, 558, 110 S. Ct. 2126 (1990), the Supreme Court reviewed the legislative history of the Bankruptcy Code and noted Congress' intent to invest the term "claim" with the "broadest possible" scope so that "all legal obligations of the debtor . . . will be able to be dealt with in a bankruptcy case." *See* H. R. Rep. No. 95-595, at 309 (1977).

In light of the above, the Court finds the Debtors' argument that the present matter cannot be adjudicated by this Court to be unpersuasive.

In the Debtors' second argument in support of the Motion to Dismiss they assert that since a veil-piercing claim is a non-core proceeding arising under state law, this Court should consider the matter "moot" as to Count One.[4]  Debtors' Amended Memorandum of Law, p. 6, Part B.

A case becomes moot only when it is "impossible for the court to grant 'any effectual relief whatever' to a prevailing party." *Church of Scientology v. United States*, 506 U.S. 9, 12, 113 S. Ct. 447 (1992).  However, here it is clear that relief can be granted to the Plaintiff – its claim still exists and relief can be afforded to the Plaintiff.  While not made with clarity, the Debtors appear to suggest that *Stern v. Marshall,* 131 S. Ct. 2594, 180 L. Ed. 2d 475 (2011) bars the Court's consideration in a dischargeability proceeding of a cause of action that arises under state law.  Of course, in *Stern v. Marshall,* the Supreme Court held, in relevant part, that the bankruptcy court lacked the constitutional authority to determine a counterclaim for tortuous interference that arose in connection with a response to a creditor's filed proof of claim (otherwise a "core proceeding"), "which if successful, would not

---

[4]In the Pretrial Order, the Debtors acknowledge that this proceeding is "core" but also state therein an intention to seek dismissal of the case on the grounds that it is not a "core" proceeding.

merely wipe out the claim but also provide affirmative relief." *Id.* at 2616-2617.  But the Supreme Court also held that the counterclaim did not constitute a "public rights" dispute. *Id*. at 2611-2616.  Although public rights disputes may be decided by non-Article III tribunals, public rights disputes must involve rights "integrally related to a particular federal government action." *Id*. at 2613.  In summary, the *Stern* decision concluded that for the bankruptcy court to enter a final judgment on the counterclaim would be an impermissible exercise of the judicial power of the United States.

Here, however, we are presented with a dischargeability proceeding that is at the heart of a bankruptcy court's power to issue discharges of debt.  In *Husky Int'l Elecs., Inc. v. Ritz (In re Ritz)*, 459 B.R. 623, 631 (Bankr. S.D. Tex. 2011), the court addressed this issue determining:

> it may exercise authority over essential bankruptcy matters under the "public rights" exception. Under *Thomas v. Union Carbide Agric. Prods. Co.*, a right closely integrated into a public regulatory scheme may be resolved by a non-Article III tribunal. 473 U.S. 568, 593, 105 S. Ct. 3325, 87 L. Ed. 2d 409 (1985). The Bankruptcy Code is a public scheme for restructuring debtor-creditor relations, necessarily including "the exercise of exclusive jurisdiction over all of the debtor's property, the equitable distribution of that property among the debtor's creditors, and the ultimate discharge that gives the debtor a 'fresh start' by releasing him, her, or it from further liability for old debts." *Cent. Va. Cmty. Coll. v. Katz*, 546 U.S. 356, 363-64, 126 S. Ct. 990, 163 L. Ed. 2d 945 (2006); *see N. Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 71, 102 S. Ct. 2858, 73 L. Ed. 2d 598 (1982) (plurality opinion) (noting in dicta that the restructuring of debtor-creditor relations "may well be a 'public right'"). But see *Stern*, 131 S. Ct. 2594, 2011 WL 2472792, at *20 n.7 ("We noted [in *Granfinanciera]* that we did not mean to 'suggest that the restructuring of debtor-creditor relations is in fact a public right.'").
> This suit involves a dispute over the Debtor's discharge. The right to a discharge is established by the Bankruptcy Code

and is central to the public bankruptcy scheme. *See Katz*, 546 U.S. at 363-64 (including a discharge among the "[c]ritical features" of a bankruptcy proceeding). A debtor, upon surrendering his or her assets for distribution in a Chapter 7 case, is entitled to a discharge. *See Tenn. Student Assistance Corp. v. Hood*, 541 U.S. 440, 447, 124 S. Ct. 1905, 158 L. Ed. 2d 764 (2004) ("A bankruptcy court is able to provide the debtor a fresh start in this manner . . . because the court's jurisdiction is premised on the debtor and his estate, and not on the creditors."). Determinations of whether a debtor meets the conditions for a discharge are integral to the bankruptcy scheme, and the Bankruptcy Court has the authority to make such determinations.

Similarly, Bankruptcy Court has the authority to determine when the statutorily established right to a discharge does not apply. Unless a creditor proves the applicability of an exception to discharge, the creditor is entitled to collect only against the bankruptcy estate. *Tower Credit, Inc. v. Gauthier (In re Gauthier)*, 349 F. App'x 943, 945 (5th Cir. 2009) (per curiam) ("[T]he creditor claiming nondischargeability . . . has the burden of proving, by a preponderance of the evidence, that the debt is exempt from discharge."). When a bankruptcy court determines the extent of a creditor's nondischargeable claim, the court simply decides that a particular creditor is entitled to something more than the creditor would otherwise get out of the bankruptcy bargain. Such determinations are inextricably tied to the bankruptcy scheme and involve the adjudication of rights created by the Bankruptcy Code. This case therefore falls within the Bankruptcy Court's authority, and the Bankruptcy Court's judgment is final.

Supporting *Ritz* is *Collins v. Ryckman (In re Ryckman)*, 468 B.R. 754, 759 (Bankr. W.D.Pa. 2012), wherein the court stated: .

"This Court agrees that '[t]he right to discharge is established by the Bankruptcy Code and is central to the public bankruptcy scheme.' *Ritz*, 459 B.R. at 631. The determination of nondischargeability of a particular creditor's debt is simply a decision as to whether that creditor is entitled to something more than he would otherwise receive in the bankruptcy case. *Id*. at 632. 'Such determinations are inextricably tied to the bankruptcy scheme and involve the adjudication of rights created by the Bankruptcy Code.' *Id*. Accordingly, this Court has the authority to e enter final judgment as to the non-dischargeability of the Plaintiffs' claims."

*See also, Carpenters Pension Trust Fund v. Moxley,* No. 11-16133, 2013 U.S. App. LEXIS 17288, at *11 (August 20, 2013) ("dischargeability determination is necessarily resolved during the process of allowing or disallowing claims against the estate, and therefore constitutes a public rights dispute that the bankruptcy court may decide."); *cf., CIBC 19 East Greenway, LLC v. Bataa/Kierland LLC (In re Bataa/Kie*rland LLC), 496 B.R. 183, 188-189 (Bankr. D. Az. 2013) (bankruptcy court has authority to decide contractual dispute in the context of plan confirmation under the "public rights" exception to *Stern v. Marshall,* relying on the "persuasive" reasoning of *Ritz)*.

This Count concurs with and adopts the legal analysis in the *Ritz*, *Carpenters*, and *Ryckman* decisions, and determines that it has authority under the "public rights" exception to consider and decide the issue of veil-piercing in the context of this dischargeability proceeding.

Finally, in their third argument, the Debtors seek dismissal of the Third Count of the Complaint wherein the Plaintiff alleges that the Debtors, as stockholders, officers and directors of QMSI, had a fiduciary duty to QMSI's creditors. The Debtors simply argue that they did not.

One function of a motion to dismiss is "'to assess the legal feasibility of the complaint.'" *Mytych v. May Dept. Stores Co.*, 34 F. Supp. 2d 130, 131 (D. Conn. 1999), quoting *Ryder Energy Distribution v. Merrill Lynch Commodities, Inc*., 748 F.2d 774, 779 (2d Cir. 1984). In ¶59 of Count Three of the Plaintiff's Complaint, the Plaintiff alleges that "[a]s the sole shareholders, directors, and officers of QMSI, Defendants served in a fiduciary role for that corporation and its creditors." On that basis, the Plaintiff alleges that by dissipating

QMSI's assets for their personal benefit, while at the same time incurring debt to the Plaintiff and other creditors, the Debtors committed fraud and defalcation while acting in a fiduciary capacity within the meaning of Code §523(a)(4).

The Defendants have moved to dismiss this Count on the grounds that "Connecticut law does not recognize a fiduciary obligation running from the directors or officers of a corporation to the corporation's creditors even during the corporation's insolvency." Debtors' Amended Memorandum of Law, p. 8. The Plaintiff does not directly challenge this assertion in its Memorandum in Opposition, pp. 14-15, but argues that there is no basis to dismiss the Count in its entirety since it also alleges that the alleged debts are non-dischargeable because they are a product of embezzlement and/or larceny which does not require a fiduciary relationship between parties, within the meaning of §524(a)(4).[5]

The Debtors primarily cite in support of their position the holding of the U.S. District Court for the District of Connecticut in the case of *Master-Halco, Inc. v. Scillia, Dowling & Natarelli, LLC*, 739 F. Supp. 2d 100 (D. Conn. 2010). In *Master-Halco*, United States District Judge Mark R. Kravitz noted Second Circuit authority to the effect that where a state's highest court has not yet determined the matter, a district court is not bound to follow decisions of the lower courts, *Id*. at 101; *see also Lander v. Hartford Life & Annuity Ins. Co.*, 251 F. 3d 101, 119 (2d Cir. 2001). Nevertheless, notwithstanding the absence of a decision

---

[5]The Court is fully cognizant of the fact that in the Reply Memorandum filed with the Court on the eve of the Hearing, the Debtors make for the first time a very brief argument, without citation to legal authority, that the Plaintiff's Complaint in so far as it seeks a determination of non-dischargeability against the Debtors on grounds of embezzlement and larceny, is fatally defective because it refers to the embezzlement and larceny of funds belonging to the Debtors' company and alleges no such injury to the Plaintiff, a prerequisite to relief on those grounds. However, in light of the Debtors' failure to raise the issue earlier in its Motion, thus denying the Plaintiff a fair opportunity to respond and the Debtors' failure to adequately support their position with legal authority, the Court will not consider that argument at this time as not having been properly raised.

of the Connecticut Supreme Court, Judge Kravitz chose to follow a decision by the Connecticut Superior Court which Judge Kravitz found to be particularly "well reasoned," and likely to be followed by other Connecticut courts in the future. *Master-Halco*, 739 F. Supp. 2d at 101. The decision, based primarily upon an analysis of Delaware law, held that "whether a corporation is solvent or insolvent, directors of the corporation do not owe a fiduciary duty to a corporate creditor that would expose them to personal liability to the creditor for an alleged breach of that duty," *Id.* at 102, quoting from *Metcoff v. Lebovics*, 51 Conn. Supp 68, 74 (2007). In *Metcoff*, that court in turn, followed the reasoning of the Delaware Supreme Court:

> It is well established that the directors owe their fiduciary obligations to the corporation and its shareholders. While shareholders rely on directors acting as fiduciaries to protect their interests, creditors are afforded protection through contractual agreements, fraud and fraudulent conveyance law, implied covenants of good faith and fair dealing, bankruptcy law, general commercial law and other sources of creditor rights. . . . Recognizing that directors of an insolvent corporation owe direct fiduciary duties to creditors, would create uncertainty for directors who have a fiduciary duty to exercise their business judgment in the best interest of the insolvent corporation. To recognize a new right for creditors to bring direct fiduciary claims against those directors would create a conflict between those directors' duty to maximize the value of the insolvent corporation for the benefit of all those having an interest in it, and the newly recognized direct fiduciary duty to individual creditors. Directors of insolvent corporations must retain the freedom to engage in vigorous, good faith negotiations with individual creditors for the benefit of the corporation.

*N. Am. Catholic Educ. Programming Found., Inc. v. Gheewalla*, 930 A.2d 92, 99-103 (Del. 2007) (footnotes omitted).

The *Master-Halco* court also relied on another Connecticut Superior Court decision, decided shortly after *Metcoff*, which both adopted the reasoning of the court in *Metcoff* and held further, after referring to Conn. Gen. Stat. §33-673(b) which exempts shareholders

from liability "for the acts or debts of the corporation," that "[t]here is no statutory or case law which imposes any fiduciary duty to creditors on the members, shareholders, officers or directors of a corporation or limited liability company." *All Metals Indus. v. TD Banknorth*, No. CV75002464S, 2008 Conn. Super. LEXIS 487, at *13 (February 27, 2008). Finally, in two recent federal district court decisions, both decided by then United States District Judge Christopher F. Droney, now Judge of the United States Court of Appeals of the Second Circuit, he concurred with the Connecticut Superior Court holdings and with that of the court in *Master-Halco*, stating further that "no Connecticut court has recognized a direct cause of action for creditors to bring claims of breach of fiduciary duty against a corporate director. *Baker & Taylor, Inc. v. AlphaCraze.com Corp.,* No. 3:07-cv-1851, 2011 U.S. Dist. LEXIS 87801, (August 8, 2011) and *Wells Fargo Bank, N.A. v. Konover*, No. 3:05-cv-1924, 2011 U.S. Dist. LEXIS 32079 (March 28, 2011). This Court concurs with both the reasoning and conclusions of those aforementioned state and federal courts.

Connecticut Superior Courts have determined that members, shareholders, officers and director of corporations and Limited Liability Companies do not owe fiduciary duties to such entities creditors. This Court, like the federal district courts in *Master-Halco*, *Baker & Taylor* and *Wells Fargo Bank*, finds the applicable state court decisions referenced herein to be well reasoned and concurs in their holdings.

### VI. CONCLUSION AND ORDER

The determination in *Stern v. Marshall* that a bankruptcy court may enter a final judgment when a state court action is fully resolvable by ruling on a creditor's proof of claim, neatly parallels the factual situation presented in this case. Here the Court is faced with

determining dischargeability, a determination central to federal bankruptcy proceedings, and a public rights dispute that it may decide. This Court's determination as to whether the Plaintiff may "pierce the corporate veil", so as to make the Debtors personally liability to it on QMSI's debt, will permit the Court to resolve in total the issue of nondischargeability.

However, the Court agrees with the Debtors that the Plaintiff states no basis upon which relief can be granted as it relates to its assertion in Count Three that the Defendants as stockholders, officers and directors of QMSI, had a fiduciary duty to their creditors, and that part of the Count shall be dismissed.

In accordance with the discussion herein:

**IT IS HEREBY ORDERED** that the Motion to Dismiss is **GRANTED IN PART** – in so far as Count Three is based upon the alleged existence of a fiduciary duty owed by the Debtors, as shareholders, officers and directors of QMSI, to the Plaintiff, as a creditor of QMSI, Count Three is **DISMISSED**, and

**IT IS FURTHER ORDERED** that in all other respects the Motion to Dismiss is **DENIED**.

Dated: October 22, 2013                                              BY THE COURT

                                                                     Albert S. Dabrowski
                                                                     Chief United States Bankruptcy Judge